## J. Purdy Cope Hotels Co. v. Liverpool & London & Globe Ins. Co.

*F. B. Holmes*, for plaintiff; *C. C. Shull*, contra.

SHULL, P. J., December 28, 1932.—This matter comes before the court on a petition of plaintiff for rule to show cause why defendant should not submit to arbitration under the Act of April 25, 1927, P. L. 381, commonly called the Arbitration Act.

The policy of fire insurance involved in this case is the standard Pennsylvania fire insurance policy, made standard by the Act of June 8, 1915, P. L. 919. This act provides, inter alia, as follows:

"That on and after January first, one thousand nine hundred and sixteen, no insurance company shall issue fire insurance policies, except policies of perpetual insurance, on property in this Commonwealth, other than those of the standard form herein set forth. . . ."

The said standard policy of fire insurance provides, inter alia, as follows:

"In case the insured and this company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser. The appraisers shall first select a competent and disinterested umpire, and, failing for fifteen days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the county in which the property insured is located. The appraisers shall then appraise the loss and damage, stating separately sound value and loss or damage to each item, and, failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized, of any two, when filed with this company, shall determine the amount of sound value and loss or damage. Each appraiser shall be paid by the party selecting him, and the expenses of appraisal and umpire shall be paid by the parties equally."

The Act of Assembly of April 25, 1927, P. L. 381 (the Arbitration Act under which this petition was presented to the court), provides as follows:

"Section 1. . . . A provision in any written contract, except a contract for personal services, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

"Section 3. The party aggrieved by the alleged failure, neglect, or refusal of another to perform under a written agreement for arbitration, may petition the court of common pleas of the county having jurisdiction for an order to show cause why such arbitration should not proceed in the manner provided for in such agreement."

The question involved in this case is, does the clause in the insurance policy relative to *appraisal,* above quoted, bring this contract within the purview of the Act of April 25, 1927, P. L. 381?

In the construction of a contract, the definition and meaning of words used should be the generally accepted and understood meaning of such words and particularly is that true in construing a contract so universally commonly made and used as is a standard policy of fire insurance.

The provision of this policy is:

"In case the insured and this company shall fail to agree as to the amount of loss or damage each shall on the written demand of either select a competent and disinterested appraiser. . . . the appraisers shall then appraise the loss", etc.

The words appraise and appraiser are words of very common use; neither is in any way synonymous with the words arbitrate or arbitrator although they have to some extent been interchangeably used.

Bouvier's Law Dictionary defines appraise as follows: "To value property at what it is worth." 1 Words and Phrases, (first series) 463, defines appraisal of property as "the valuation of it or an estimation of its value".

Bouvier's Law Dictionary defines appraisement as "a just valuation of property".

Webster's Dictionary defines appraise "To set a value on; to estimate the worth of, esp. by persons appointed for the purpose"; defines appraisal as "Act of appraising; . . . valuation"; defines appraisement as "Act of, or proceeding used in, appraising".

Webster's Dictionary defines arbitration as:

"A substitution, by consent of parties, of another tribunal for those provided by the ordinary processes of law (152 Mass. 419) ; the hearing and determination of a cause between parties in controversy by a person or persons chosen by the parties, or appointed under statutory authority, instead of by the judicial tribunal provided by law".

To our mind, that these words have to some extent been used as synonyms is what brings about this controversy, for, if we were to determine this matter on the commonly accepted definition of these words then, to our mind, clearly the Arbitration Act could not be held to apply, for as is clearly shown by the definitions one is the substitution of another tribunal for a recognized legal process, while the other is an informal act which may or may not have to do with a legal process; but inasmuch as these words have, in judicial decisions, been accepted or partially accepted as synonyms, we are under the necessity of considering the statute and construing it from that point of view as well. In doing this, our first query is whether or not, under one or the other designations, it was the clear intent of the legislature to abolish the distinction between the two words in law and to establish a general rule under which all written agreements submitting any controversy to certain individuals shall hereafter be arbitration agreements and necessarily fall within the provisions of the Arbitration Act. In determining the intent of the legislature, we must keep in mind the rule that statutes in derogation of the common law must be strictly construed and may not be extended by implication. The Arbitration Act is unquestionably in derogation of our common law for it establishes a practice and a tribunal, the effect of which may be to deprive the parties of their right of trial by jury and establishes a method for adjustment of differences between parties to a controversy which ousts jurisdiction of the courts. For these reasons, unless it should clearly appear to be the purpose of the legislature to include "appraisement" in the general designation "arbitration", the Arbitration Act cannot be held to apply to the appraisement provision of the standard fire insurance policy, in which appraisement and nothing else was intended by the parties and in which nothing else was intended by the legislature when the Act of June 8, 1915, P. L. 919, creating the standard fire insurance policies, was passed and became the law of this Commonwealth; and, having in mind not only the rule relative to the construction of statutes in derogation of common law but likewise the commonly accepted meaning of the words "appraisal" and "arbitration" and the marked difference shown in the definitions of these two words by dictionaries and other authorities on words, together with the fact that a distinction has invariably been observed between reference of an incidental matter of appraisement or calculation, the decision of which was not conclusive to the ultimate rights of the parties except as a mere matter of amount due, and the submission of all matters that are in controversy between the parties to final determination upon the whole issue; and further having in mind that prior to the passing of the Arbitration Act these appraisers were never considered or treated as arbitrators, we conclude the Pennsylvania standard fire insurance policy is not such a written contract of arbitration as to be subject to the provisions of the Arbitration Act. If we were to hold otherwise, it is not in the least clear to us what manner of judgment could be entered. The Arbitration Act ousts the jurisdiction of the court other than as to the formal entry of a judgment where an agreement subject to the operation of that act has been made by the parties.

At the termination of the arbitration, if the appraisal provision of the standard fire insurance policy is held subject to that act, the insurance company is not bound to pay the value fixed by the appraisers, but if it is liable under the policy it has the option of paying the appraised value or of replacing the destroyed or damaged property, and under such conditions we cannot see how any practical application of the Arbitration Act to this appraisal could be made. And, further, we would have serious doubts of the constitutionality of the Arbitration Act as applied to the standard fire insurance policy as created by the act of the legislature for, as we view it, such application of the Arbitration Act would result indirectly in compulsory arbitration on the part of anyone who desired to insure property subject to fire loss other than insurance under a perpetual policy as provided by the Act of June 9, 1915, P. L. 919.

And now, December 28, 1932, the prayer of the petition to compel arbitration is denied and the petition dismissed at the cost of the petitioner.

From C. C. Shull, Stroudsburg, Pa.